UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EUNICE FIELD, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | Civil Action No. 18-cv-11618-DJC |
| ALLISON HALLETT, Superintendent, MCI Framingham, | ) ) ) ) | |
| Respondent. | ) ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                                           **April 10, 2020**

### I.    Introduction

Petitioner Eunice Field ("Field") has filed a petition for writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254 alleging ineffective assistance of counsel in violation of the Sixth Amendment. D. 1. Respondent, the Superintendent of the Massachusetts Correctional Institution at Framingham, opposes the Petition. D. 25. For the reasons discussed below, the Court DENIES the Petition, D. 1.

### II.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), when a petitioner raises a claim that was adjudicated on the merits in state court, federal habeas courts must defer to the state court's determination unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) (quoting 28 U.S.C. § 2254(d)). As an initial matter, a petitioner must show that

1

she has exhausted all her state court remedies or, in the alternative, that the state did not offer appropriate corrective measures. 28 U.S.C § 2254(b). To prove exhaustion, Field must demonstrate that she has "fairly and recognizably" presented her claim to the state's highest court, the Supreme Judicial Court in this case. Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000); see Adelson v. DiPaola, 131 F.3d 259, 263 (1st Cir. 1997).

For the purposes of § 2254(d)(1), federal law is defined as Supreme Court holdings and excludes dicta. White v. Woodall, 572 U.S. 415, 419 (2014). "[A]n unreasonable application of federal law" is not the same as "an *incorrect* application of federal law." Scott v. Gelb, 810 F.3d 94, 101 (1st Cir. 2016) (emphasis in original) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)). Not even clear error will establish an objectively unreasonable conclusion. White, 572 U.S. at 419. Habeas relief is not warranted if "'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

For the purposes of § 2254(d)(2), any factual determinations made by a state court are "presumed to be correct" unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### III. Relevant Factual and Procedural Background

The following facts are drawn from the state court record.[1]

---

[1] These materials are contained in the Supplemental Appendix ("S.A."), filed manually. D. 17; D. 26. Where the Supplemental Appendix is paginated, referenced material will be cited as S.A. [volume number] [appendix pinpoint citation]. Where the Supplemental Appendix is not

A. **Events Leading Up to the Commission of the Crime**

The charge against Field arose out of events leading up to and culminating on August 9, 2010. Prior to that day, Field had been in a long-term, romantic relationship with Renee Williams ("Williams"). S.A. Vol. II, Trial Transcript (Oct. 9, 2012) 10:16-21. Although their romantic relationship began to deteriorate in early 2010, Field and Williams remained friends and, for the most part, continued to live together in Brockton, Massachusetts. Id. at 19:24-20:20, 23:24-24:8, 28:2-8, 29:12-15, 30:3-13.

Field came to know the victim, Lorraine T. Wachsman ("Wachsman"), because Wachsman was Williams's Alcoholics Anonymous ("AA") sponsor. Id. at 7:1-4, 18:3-4. Field also participated in AA, having had a history of substance abuse and relapses. Id. at 6:9-13, 8:23-9:1, 10:1-10. When Field's romantic relationship with Williams began to deteriorate in early 2010, Field felt that Wachsman had influenced that change. Id. at 25:10-20.

On August 8, 2010, Field telephoned Wachsman and arranged to meet her the following morning. Id. at 43:6-12, 44:5-13. That evening, Field posted on her Facebook page, "Tic toc, tic toc. I'm going to finish my book tomorrow. You're all going to be real interested in it because you're all in it. The title is Tormented Minds by Eunice Field." S.A. Vol. II, Trial Transcript (Oct. 4, 2012) 170:16-171:4. At around the same time, Field wrote a note to Williams that stated Wachsman "will get what she deserves for coming in between you and me." Id. at 116:5-117:10; S.A. Vol. I, 418. At trial, Williams testified that Field appeared "okay" and "normal" between the time Field arranged to meet with Wachsman and around 10:15 a.m. the following morning. S.A. Vol. II, Trial Transcript (Oct. 9, 2012) 43:17-24, 45:12-18, 46:18-47:4, 47:17-48:17.

---

paginated, references to material will be cited as S.A. [volume number], [description] [document pinpoint citation].

### B. The Commission of the Crime

On August 9, 2010, Field arrived at Wachsman's apartment in Bridgewater, Massachusetts with a knife, S.A. Vol. III, Bridgewater Police Interview Transcript 16:21-17:11; S.A. Vol. III, Brockton Police Interview Transcript 10:16-19, and stabbed Wachsman multiple times in the neck, chest and back. S.A. Vol. II, Trial Transcript (Oct 4, 2012) 185:10-17, 186:22-187:3; S.A. Vol. III, Brockton Police Interview Transcript 12:5-11.

### C. Police Investigation and Charge

#### 1. *Brockton Police Department*

At or around 12:45 p.m. the same day, Brockton police officers found Field sitting in her parked car outside the Brockton police station covered in blood. S.A. Vol. II, Trial Transcript (Oct. 2, 2012) 146:21-147:1, 148:16-149:7, 150:23-152:11. A Brockton police officer asked Field to step out of her vehicle and Field complied. Id. at 150:23-151:19. At around the same time, Field told the police officers that she had just killed someone. Id. at 151:12-19. After Brockton police officers brought Field into the police station unhandcuffed, medical personnel examined Field. Id. at 143:9-144:7, 182:3-10, 183:7-24. Field declined to be transported to the hospital for further medical examination and agreed to be interviewed. Id. at 139:24-140:8, 193:2-8.

During the video-recorded interview, Brockton police officers read Field her Miranda rights and Field responded that she understood them. S.A. Vol. III, Brockton Police Interview Transcript 3:13-4:4. Brockton police officers then asked whether she wished to waive her Miranda rights and Field responded in the affirmative. Id. at 4:5-8. Field informed the police officers shortly thereafter that she was bipolar and that she had run out of her bipolar medication two days

4

before. Id. at 6:20-7:7.² Among numerous incriminating statements Field made throughout the video-recorded interview, see, e.g., id. at 20:7-20, 23:2-14, Field stated that she intended to kill Wachsman with the knife she brought from her home, id. at 18:17-19:8.

The video-recorded interview also revealed police officers repeating certain questions before Field responded, if she responded at all, see, e.g., id. at 11:2-18, 15:18-16:8, 23:20-24:1, and Field uttering nonsensical statements, see, e.g., id. at 8:16-17, 13:13, 34:9-14. A Brockton police officer present at the interview later testified at trial that Field "seemed sluggish and not focused during the interview." S.A. Vol. II, Trial Transcript (Oct. 4, 2012) 19:12-21. The Brockton interview lasted approximately 100 minutes. See S.A. Vol. 1, Brockton Police Department interview DVD.

2.  *Bridgewater Police Department*

After the Brockton police interview, officers processed and transported Field to the Bridgewater police station. S.A. Vol. II, Trial Transcript (Oct. 3, 2012) 90:15-24. Bridgewater police read Field her Miranda rights and conducted another video-recorded interview in which Field again made incriminating statements. S.A. Vol. III, Bridgewater Police Interview Transcript 3:9-5:5. Among those statements, Field stated that she laid on the floor next to Wachsman, looked into her eyes and said to Wachsman "you're feisty." Id. at 48:13-18. Field also told Wachsman that she "needed to mind her own business." Id. at 50:3-13. In addition, Field stated that she did not attempt to help Wachsman and that she felt good about her actions that day. Id. at 50:18-51:4, 56:20-57:1.

---

² Field took numerous medications, including some for bipolar disorder. S.A. Vol. II, Trial Transcript (Oct. 9, 2012) 68:5-8, 68:19-69:12.

5

Throughout the Bridgewater interview, Field conditioned her statements on receiving food, water and a cigarette. See, e.g., id. at 5:13-15, 18:7-8, 18:18-20. Approximately halfway through the interview, Field stated "Don't ask me any more questions." Id. at 32:15-16. Bridgewater police officers, however, urged Field to continue talking. See id. at 32:17-61:22. The Bridgewater interview lasted approximately forty-six minutes. See S.A. Vol. I, Bridgewater Police Department interview DVD.

### D. Relevant State Court Proceedings

On October 21, 2010, a state grand jury indicted Field for murder in the first degree. S.A. Vol. I, 297.

#### 1. *State Court Trial*

Field's trial began on October 2, 2012 in Plymouth Superior Court. S.A. Vol. II, Trial Transcript (Oct. 2, 2012). As part of its case-in-chief, the Commonwealth introduced the two video-recorded police interviews and called Dr. Russell Vasile, a forensic psychiatrist, to testify as an expert witness. S.A. Vol. II, Trial Transcript (Oct. 3 and 9, 2012). Dr. Vasile testified that in watching Field's interviews, he saw no evidence of manic behavior, depression, delusions, psychosis or hallucinations. S.A. Vol. II, Trial Transcript (Oct. 9, 2012) 157:14-24, 159:2-11, 160:2-13, 161:1-9, 162:1-10, 168:13-169:4, 169:10-17, 170:1-8. He also believed with a "reasonable degree of medical certainty" that Field was criminally responsible for her actions. Id. at 198:12-22. Field's trial counsel, John Darrell ("Darrell"), cross-examined Dr. Vasile. Id. at 207:22-242:17.

At trial, Darrell did not consult or introduce a mental health expert and did not contest that Field killed Wachsman. S.A. Vol. III, Motion Hearing (Jan. 8, 2016) 60:14-20; see generally, S.A. Vol. II, Trial Transcripts. Darrell, rather, sought to convince the jury that Field's bipolar disorder

6

prevented her from forming the requisite intent to commit murder in the first degree. S.A. Vol. III, Motion Hearing (Jan. 8, 2016) 80:24-81:22. At the post-trial hearing on the motions for new trial in Plymouth Superior Court, Darrell testified that he "wanted the jury to hear . . . that she was bipolar and to see what [he] considered bizarre behavior at the two interviews." Id. at 63:7-12. Darrell "was convinced that when the jury heard about her bipolar [disorder] [and] her past mental illness[ ] that they would" be sympathetic and instead convict Field of murder in the second degree. Id. at 81:18-22.

On October 11, 2012, the jury found Field guilty of murder in the first degree based on deliberate premeditation and extreme atrocity or cruelty. S.A. Vol. II, Trial Transcript (Oct. 11, 2012) 14:18-15:6. The trial court sentenced Field to a term of life imprisonment without parole. Id. at 21:16-20.

2.   *Post-Trial Proceedings*

On October 17, 2012, Field filed a timely notice of appeal to the Supreme Judicial Court. S.A. Vol. I, 8. In June 2014, while her direct appeal was pending, Field moved for a new trial, asserting that Darrell provided ineffective assistance by failing to consult a mental health expert on trial strategy. S.A. Vol. I, 9; S.A. Vol. I, 313. On June 19, 2014, the Supreme Judicial Court stayed the appellate proceedings and remanded Field's motion for a new trial to Plymouth Superior Court. S.A. Vol. I, 9. Field subsequently filed a supplemental motion for a new trial, asserting that Darrell also was ineffective for failing to move to suppress the two video-recorded police interviews. S.A. Vol. I, 9; S.A. Vol. I, 318.

On January 8, 2016, the trial judge held an evidentiary hearing on the motions. S.A. Vol. III, Motion Hearing Transcript (Jan. 8, 2016). Field's post-trial expert witness, Dr. William Land, a clinical and forensic psychiatrist, testified that Field was not capable of voluntarily waiving her

7

Miranda rights or voluntarily making a statement. Id. at 6:1-3, 18:13-20. He also testified that Field was not capable of acting with extreme atrocity or cruelty at the time of the crime. Id. at 19:2-9. Dr. Land did not testify, however, whether Field lacked the capacity for deliberate premeditation. See generally, id. at 5:20-57:22.

After the evidentiary hearing, Field filed a second supplemental motion for a new trial, asserting that Darrell provided ineffective assistance by failing to consult a mental health expert to determine Field's competency to stand trial. S.A. Vol. I, 322. On March 3, 2016, the trial judge denied all three motions for a new trial. S.A. Vol. I, 324. On March 15, 2016, Field filed a timely notice of appeal to the Supreme Judicial Court. S.A. Vol. I, 347.

On August 1, 2017, the Supreme Judicial Court affirmed the trial court's rulings. S.A. Vol. I, 445. Although the Supreme Judicial Court found that Darrell erred by failing to consult a mental health expert on trial strategy, his error did not warrant relief because "there [was] no basis on which to conclude that consultation with [an] expert would have altered the jury's conviction of murder in the first degree based on deliberate premeditation." S.A. Vol. I, 450. The court similarly held that even if Darrell erred by failing to move to suppress the two video-recorded interviews, the court "[could not] conclude on this record that the admission of the video-recorded interviews was likely to have affected the jury's verdict of murder by deliberate premeditation." S.A. Vol. I, 450-51. The court also concluded that, despite Field's argument that consulting with a mental health expert may have helped Darrell realize that Field was incompetent to stand trial, Field "presented no evidence to support such a conclusion." S.A. Vol. I, 452.

### E. This Petition

In this Petition, Field claims that Darrell provided ineffective assistance at trial because he failed to (1) consult a mental health expert in raising a mental health defense and in cross-

8

examining Dr. Vasile, (2) move to suppress both video-recorded police interviews and (3) consult a mental health expert to determine Field's competency to stand trial. D. 1 at 6; D. 21.

**IV.     Discussion**

To establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), Field must show: "(1) deficient performance by counsel (2) resulting in prejudice." Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009) (quoting Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008)). To demonstrate deficient performance, Field must illustrate that her counsel's performance "fell below an objective standard of reasonableness under the circumstances." Yeboah-Sefah, 556 F.3d at 70 (quoting Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007)). To demonstrate prejudice, Field must show "that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." Yeboah-Sefah, 556 F.3d at 70 (quoting Sleeper, 510 F.3d at 39).

When a plaintiff brings a habeas claim alleging ineffective assistance of counsel, this Court's review is highly deferential. Because "[t]he standards created by Strickland and §2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so."[3] Harrington, 562 U.S. at 105 (citations omitted) (quotations omitted). "The Strickland standard [itself] is a general one, so the range of reasonable applications is substantial." Id. When habeas applies, the question is not whether counsel's actions were reasonable, but rather whether there is "any reasonable argument that counsel satisfied Strickland's deferential standard." Id. In other words, the pivotal question here is whether the Supreme Judicial Court's application was reasonable. See Mello v. DiPaulo, 295 F.3d 137, 143 (1st Cir. 2002) (reviewing the Supreme Judicial Court's

---

[3] Massachusetts's ineffective assistance of counsel standard does not employ "identical phraseology" as the Strickland standard, but the two are "functional[ly] equivalent" for habeas purposes. See Ouber v. Guarino, 293 F.3d 19, 32 (1st Cir. 2002).

9

ineffective assistance of counsel determination for reasonableness); Harrington, 562 U.S. at 105. With this standard, the Court turns to Field's claims.

### A. Field was Not Prejudiced by Trial Counsel's Failure to Consult a Mental Health Expert on Trial Strategy

Field claims that Darrell was ineffective for failing to consult a mental health expert in raising a mental health defense and in cross-examining the government's expert, Dr. Vasile, at trial. D. 1 at 6; D. 21 at 15. Even assuming that trial counsel's failure to consult a mental health expert was deficient, such failure was not prejudicial. Although the Supreme Judicial Court concluded that Darrell erred in failing to consult a mental health expert, the court concluded that Field had not "established that [Darrell's] failure was likely to have influenced the jury's verdict of murder with deliberate premeditation." S.A. Vol. I, 449. The Supreme Judicial Court further noted that the "the record does not establish that [Dr. Land] could have assisted trial counsel in either presenting a defense to, or more effectively cross-examining the Commonwealth's expert regarding, deliberate premeditation." Id. Reviewing this determination for reasonableness, Mello, 295 F.3d at 145-147, it cannot be said that the Supreme Judicial Court was unreasonable in this conclusion.

Field has presented no argument, nor does the record suggest, that consulting a mental health expert would have influenced the jury in deciding deliberate premeditation for the first-degree murder charge against her. See S.A. Vol. III, Motion Hearing (Jan. 8, 2016) 5:20-57:23. Field argues that the Supreme Judicial Court "did not acknowledge that [Dr. Land] found evidence of psychosis at the time of the crime (and her confessions)." D. 21 at 22. Dr. Land, however, "did not testify that [Field] lacked the capacity to deliberately premeditate," which was one of the government's theories for the first-degree murder charge, and he "agreed [at the post-trial motion hearing] that there was evidence to support the conclusion that [Field] had formulated a plan to

kill the victim and had executed that plan." S.A. Vol. I, 450. This evidence includes Field arranging the meeting with Wachsman, her note to Williams and her Facebook post. Based on this evidence and Dr. Land's opinion, the Court concludes that it was not unreasonable for the Supreme Judicial Court to find that Field was not prejudiced. See Mello, 295 F.3d at 146 (holding that the Supreme Judicial Court's determination was not unreasonable because independent evidence suggested that the Plaintiff had planned the crime). Field is not, therefore, entitled to habeas relief as to this claim.

### B. Trial Counsel was Not Ineffective for Failing to Move to Suppress

Field also contends that Darrell provided ineffective assistance for failing to move to suppress the two video-recorded police interviews. D. 1 at 6. As to this claim, the Supreme Judicial Court concluded that Field was not prejudiced but did not address whether Darrell's assistance was deficient. S.A. Vol. I, 450-51. Given that "the AEDPA standard only applies when the state court has addressed the merits of the petitioner's federal habeas claim," the Court reviews Field's argument that Darrell's performance was deficient *de novo*. Rivera v. Thompson, 879 F.3d 7, 12-13 (1st Cir. 2018) (stating that "when the state court has reached only one prong of the test for ineffective assistance of counsel, the other prong is reviewed de novo"). With respect to the prejudice prong, however, Field must show that the Supreme Judicial Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

Field argues that trial counsel rendered ineffective assistance by failing to move to suppress the two video-recorded interviews because, among other reasons, she did not knowingly, intelligently nor voluntarily waive her Miranda rights and her statements were not voluntarily made. D. 21 at 11-15. The Court also understands that Field claims trial counsel should have used

11

witness and expert testimony in lieu of her statements to put her bipolar disorder before the jury. Id. at 14.

The Court in Strickland noted that "[t]here are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689. A counsel's strategic decisions do not amount to ineffective assistance unless they are "so manifestly unreasonable as to be unprotected by the labels of 'trial strategy' or 'trial tactics.'" Commonwealth v. Adams, 374 Mass. 722, 728 (1978). "[S]trategic choices made after less than [a] complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 690-91. Even if a petitioner successfully presents a viable alternative trial strategy that could have been employed, counsel's decision is not automatically rendered "manifestly unreasonable." Smith v. Dickhaut, No. 12-30120-MGM, 2015 WL 12856458, at *13 (D. Mass. May 28, 2015).

At the post-trial motion hearing, Darrell testified that he "wanted the jury to hear . . . that [Field] was bipolar and to see what [he] considered bizarre behavior at the two interviews." S.A. Vol. III, Motion Hearing (Jan. 8, 2016) 63:7-12. He "was convinced that when the jury heard about her bipolar [disorder] [and] her past mental illness[ ] that they would be sympathetic to it . . . ." Id. at 81:18-22. In short, Darrell employed a trial strategy—albeit an unsuccessful one—that was geared towards obtaining a conviction of the lesser included offense, murder in the second degree. Id. Because "[t]here are countless ways to provide effective assistance in any given case," Strickland, 466 U.S. at 689, the Court does not conclude that Darrell's performance in this regard "fell below an objective standard of reasonableness under the circumstances." Yeboah-Sefah, 556 F.3d at 70.

Even assuming Darrell's performance was deficient in not moving to suppress the video-recorded statements, Field has not shown that the Supreme Judicial Court's determination on prejudice was unreasonable. Harrington, 562 U.S. at 103. In its decision, the Supreme Judicial Court concluded, among other things, that even without the two video-recorded interviews, there was still "overwhelming" evidence of Field's premeditation. S.A. Vol. I, 450-51. The court pointed to (1) the note Field wrote to Williams the previous night stating Wachsman "will get what she deserves for coming between you and me," (2) Field's Facebook post that "allowed the jury to conclude that [Field] was preparing to take some sort of drastic action the following day" and (3) Field arranging the meeting with Wachsman for the following morning. S.A. Vol. I, 451.

Field argues that she "need not show that counsel's deficiency more likely than not altered the outcome" but rather "a reasonable probability of a different outcome at trial had the confession been excluded, particularly given the centrality of the confession in the case." D. 21 at 20. Field has not met her burden, however, in demonstrating that the court's conclusion was unreasonable. Harrington, 562 U.S. at 103. As stated above, the Supreme Judicial Court gave specific reasons, supported by the record, that there was not a reasonable probability of a different outcome at trial. S.A. Vol. I, 451. Although Field argues that the evidence of deliberate premeditation "was not strong," D. 21 at 20, "[m]ere disagreement with the state court does not allow [federal habeas courts] to grant relief." McNary v. Lemke, 708 F.3d 905, 914 (7th Cir. 2013) (citing Harrington, 562 U.S. at 99-103). Field is, therefore, not entitled to habeas relief as to this claim.

### C. Field Was Not Prejudiced by Trial Counsel's Failure to Consult a Mental Health Expert to Ascertain Field's Competency

Field also argues that Darrell rendered ineffective assistance by failing to consult a mental health expert to ascertain her competency to stand trial. D. 1 at 6. The Supreme Judicial Court concluded that Field "presented no evidence, beyond trial counsel's statement that he was not sure that [Field] understood the mental impairment defense, that [Field] was incompetent to stand trial." S.A. Vol. I, 452. Although Field argued that "consulting with an expert may have helped trial counsel realize" that she was incompetent to stand trial, the Supreme Judicial Court concluded that Field "presented no evidence to support such a conclusion." Id. The court further noted that Dr. Land "did not testify at the hearing on the motion for a new trial that [Field] was incompetent to stand trial." Id.

Field has not presented any evidence to undermine the Supreme Judicial Court's determination that Field had not demonstrated that consulting an expert would have helped trial counsel. Rather, Field argues that Darrell's testimony at the post-trial motion hearing demonstrates that Field "could not substantively communicate with him and did not understand what was going on." D. 21 at 22. This argument asks this Court to reweigh the record in evaluating the Supreme Judicial Court's determination. "Reasonable minds reviewing the record might disagree but on habeas review that does not suffice to supersede" a state court's determination. Rice v. Collins, 546 U.S. 333, 341-42 (2006). Reviewing the record and applying the "fundamental principal of deference" to state courts, this Court finds that the Supreme Judicial Court's conclusion was not unreasonable. Teti, 507 F. 3d at 58. Field is not, therefore, entitled to habeas relief as to this claim.

### D. Field was Not Prejudiced by the Totality of Trial Counsel's Errors

Field also contends that the totality of Darrell's alleged errors resulted in prejudice. D. 21 at 24-26. The First Circuit has noted that "[a]bsent any particularized error, there can be no

cumulative error." Williams v. Drake, 146 F.3d 44, 49 (1st Cir. 1998). For all of the reasons stated above as to each of her claim, none of trial counsel's allegedly deficient performance resulted in prejudice under Strickland. Accordingly, because "cumulative-error analysis is inappropriate when a party complains of the cumulative effect of non-errors," the Court concludes that Field also is not entitled to relief on this alternative ground. United States v. Stokes, 124 F.3d 39, 43 (1st Cir. 1997).

## V. Conclusion and Certificate of Appealability

For the foregoing reasons, the Court DENIES the Petition, D. 1. Field may receive a certificate of appealability only if she "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." Miller-El, 537 U.S. at 338 (internal quotations omitted). Based upon the analysis of the record and the applicable law in this Memorandum and Order, the Court does not, at this juncture, conclude that reasonable jurists would find its conclusion, denying the Petition both on procedural and substantive grounds, debatable or wrong. The Court, therefore, is not inclined to issue a certificate of appealability, but will give Petitioner until May 11, 2020 to file a memorandum, if she seeks to address the issue of whether a certificate of appealability is warranted as to the Petition.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge